JOURNAL ENTRY AND OPINION
{¶ 1} Defendant Weaver Jones appeals from his conviction for robbery. For the reasons set forth below, we affirm.
 {¶ 2} On March 3, 2004, defendant was indicted for one count of robbery. He pled not guilty and the matter proceeded to a jury trial on June 21, 2004.
 {¶ 3} For its case, the state presented the testimony of Brenda Thorp, Kattie Rood, Dawn Makuhan, Marcus Adkins and Steven Fioritto.
 {¶ 4} Brenda Thorp testified that her twelve year-old daughter Ariel participates in competitive figure skating. On September 6, 2003, they traveled with Thorp's mother, Kattie Roop, from their home in Michigan to a competition in Cleveland. Following the competition, Thorp drove to the Days Inn in Lakewood. Roop and Ariel waited in their minivan as Thorp checked in. Thorp waited in line and observed defendant in the lobby. She stated that she observed him for a time because he was acting suspiciously. As the transaction was completed and Thorp was putting her credit card back into her purse, defendant approached Thorp from behind, and grabbed her purse, scratching her hand. Thorp chased defendant but became frightened when she saw him get into a large green van. The police later conducted a show-up at the hotel room but Thorp indicated that he was not the assailant. The next morning, she identified defendant from a photograph.
 {¶ 5} Thorp identified defendant as the assailant, and stated that she was positive that he was the man who had taken her purse.
 {¶ 6} A clerk called the police and Thorp reported the missing items from her purse and cancelled her credit cards. She later learned that her credit cards were used following the theft. Her purse was subsequently recovered but the credit cards, her children's birth certificates and social security cards were never recovered.
 {¶ 7} Thorp later learned that a woman in the lobby knew the name of the man who had robbed her and passed this information on to police.
 {¶ 8} Kattie Rood testified that, while she waited in the minivan for Thorp to check in to the hotel, defendant approached the vehicle at the driver's side, and appeared to be attempting to enter it. He then walked to the passenger's side door. The doors were locked and Roop watched defendant as he walked over to a dark van. Next, he walked into the hotel. He exited the hotel approximately five minutes later, and shortly thereafter, Thorp exited the hotel exclaiming that someone had stolen her purse. Roop positively identified defendant as the man she observed outside the hotel.
 {¶ 9} Roop admitted on cross-examination, however, that defendant did not run from the hotel before Thorp reported her purse was stolen, and that she was watching him and did not observe his hands, or what, if anything, he might have been carrying.
 {¶ 10} Dawn Makuhan testified that she was at the Days Inn helping her neighbor get a room, following a house fire. The neighbor's boyfriend, and defendant were also present, and assisted in helping move the woman's belongings into the hotel. According to Makuhan, defendant stood approximately one foot away from Thorp while she checked in and, as she held her purse to put something away, defendant grabbed it and ran out. Makuhan later gave the police defendant's name.
 {¶ 11} Lakewood Police Officer Marcus Adkins testified that he spoke to Thorp and her mother then learned defendant's name from Makuhan. The Lakewood police searched for defendant that night and the following day. Officer Adkins then received a tip that defendant was in the area north of the hotel.
 {¶ 12} Lakewood Police Officer Steven Fioritto testified that he responded to a call that a possible suspect had returned to the hotel. When he arrived there, he spoke with Derrick Hill who admitted that he had been there the previous night. He denied any involvement in the incident and Thorp and her mother likewise indicated that he was not the assailant. The officers then showed Hill a picture of defendant and Hill stated that he knew him but would not indicate whether he had been with defendant on the previous night. Officer Fioritto showed Thorp the photo and she was not certain, but Roop positively identified him.
 {¶ 13} Defendant elected not to present evidence and the matter was submitted to the jury. Defendant was found guilty of the offense. In the subsequent sentencing hearing, the court determined that imprisonment was consistent with the purposes of R.C. 2929.11, and sentenced him to four years, plus post-release control. Defendant now appeals and assigns three errors for our review.
 {¶ 14} Defendant's first assignment of error states:
 {¶ 15} "The state failed to present sufficient evidence that Appellant committed this crime."
 {¶ 16} Within this assignment of error, defendant maintains that there is insufficient evidence to establish that defendant was the assailant, and that there is insufficient evidence that physical harm was inflicted.
 {¶ 17} "Sufficiency is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." State v. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52,678 N.E.2d 541. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson (1955), 162 Ohio St. 486,124 N.E.2d 148.
 {¶ 18} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52,678 N.E.2d 541.
 {¶ 19} Pursuant to R.C. 2911.02(A)(2):
 {¶ 20} "No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
 {¶ 21} "* * *
 {¶ 22} "(2) Inflict, attempt to inflict, or threaten to inflict physical harm on another[.]"
 {¶ 23} In this matter, Roop was certain that defendant was the man she saw near the minivan acting suspiciously, and was certain that he walked out of the hotel just ahead of Thorp, as she complained that her purse was stolen. Thorp testified that she was positive that defendant was the assailant and Dawn Makuhan testified that defendant was with her in the hotel lobby, that he had stood immediately behind Thorp while she checked in and that she provided his name to police. From the foregoing, we conclude that this evidence, if believed, would convince the average mind that defendant was the assailant, and that there is therefore sufficient evidence linking him to the offense.
 {¶ 24} As to the issue of whether the state established that physical harm was inflicted, we note that "physical harm" is defined in R.C. 2901.01
as follows:
 {¶ 25} "(C) `Physical harm to persons' means any injury, illness, or other physiological impairment, regardless of its gravity or duration."
 {¶ 26} In this matter, it is undisputed that Thorp suffered a visible scratch which caused her discomfort for two days. Accordingly, viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found that the scratch was sufficient to establish physical harm.
 {¶ 27} The first assignment of error is without merit.
 {¶ 28} Defendant's second assignment of error states:
 {¶ 29} "Appellant's conviction is against the manifest weight of the evidence."
 {¶ 30} Defendant next asserts that he was convicted on the basis of questionable evidence and that the jury lost its way.
 {¶ 31} In State v. Thompkins, supra, the court illuminated its test for manifest weight of the evidence as follows:
 {¶ 32} "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." Black's [Law Dictionary (6 Ed. 1990)], at 1594."
 {¶ 33} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "`thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony. Id., citing Tibbsv. Florida (1982), 457 U.S. 31, 45, 102 S. Ct. 2211, 2220, 72 L. Ed.2d 652,663. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See Statev. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720-721.
 {¶ 34} The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id.
 {¶ 35} In this matter, the state's evidence was unrefuted. Thorp identified defendant as her assailant, and Roop identified defendant as coming out of the hotel immediately before Thorp exclaimed that her purse was stolen. Makuhan provided his name to police and he was later identified as the assailant. Although Thorp was unsure from when she viewed his photograph, she testified that she was later positive that he was the man who had stolen her purse. We therefore cannot conclude that the jury lost its way in convicting defendant of the offense.
 {¶ 36} The second assignment of error is without merit.
 {¶ 37} Defendant's third assignment of error states:
 {¶ 38} "Appellant was denied effective assistance of counsel as guaranteed by Section 10, Article I, of the Ohio Constitution and theSixth and Fourteenth Amendments to the United States Constitution when counsel failed to file a motion to suppress and when counsel failed to make a Criminal Rule 29 motion for acquittal."
 {¶ 39} Within this assignment of error, defendant maintains that his trial counsel was ineffective for failing to suppress the identification testimony because, he claims, the procedures were unnecessarily suggestive and unreliable.
 {¶ 40} "In a claim of ineffective assistance of counsel, the burden is on the defendant to establish that counsel's performance fell below an objective standard of reasonable representation and prejudiced the defense. Strickland v. Washington (1984), 466 U.S. 668, 80 L. Ed.2d 674,104 S. Ct. 2052. To reverse a conviction for ineffective assistance of counsel, the defendant must prove "(1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding." State v. Madrigal,87 Ohio St.3d 378, 388-389, 2000-Ohio-448, 721 N.E.2d 52, citingStrickland, supra at 687-688.
 {¶ 41} In evaluating whether a petitioner has been denied effective assistance of counsel, the Ohio Supreme Court held that the test is "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done." State v. Hester (1976),45 Ohio St.2d 71, 341 N.E.2d 304, paragraph four of the syllabus. When making that evaluation, a court must determine whether there has been a substantial violation of any of defense counsel's essential duties to his client and whether the defense was prejudiced by counsel's ineffectiveness." State v. Calhoun, 86 Ohio St.3d 279, 289, 1999-Ohio-102,714 N.E.2d 905.
 {¶ 42} As to the second element of the test, the defendant must establish "that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus; Strickland, supra, at 686. The failure to prove any one prong of the Strickland two-part test makes it unnecessary for a court to consider the other prong. Madrigal, supra, at 389, citingStrickland, supra, at 697.
 {¶ 43} The court must evaluate "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, supra, 466 U.S. at 690,80 L. Ed.2d at 695. The defendant has the burden of proof and must overcome the strong presumption that counsel's performance was adequate. Id. In Ohio, a properly licensed attorney is presumed competent. Vaughnv. Maxwell (1965), 2 Ohio St.2d 299, 301, 209 N.E.2d 164.
 {¶ 44} As the Strickland Court stated, a reviewing court:
 {¶ 45} "Must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id.466 U.S. at 689; see, also, State v. Hamblin (1988), 37 Ohio St.3d 153,524 N.E.2d 476, certiorari denied (1988), 488 U.S. 975, 102 L. Ed.2d 550,109 S. Ct. 515.
 {¶ 46} Moreover, counsel does not perform ineffectively by failing to file futile motions. See State v. Martin, supra. "Where the record contains no evidence which would justify the filing of a motion to suppress, the [defendant] has not met his burden of proving that his attorney violated an essential duty by failing to file the motion." Statev. Tibbetts, 92 Ohio St.3d 146, 166, 2001-Ohio-132, 749 N.E.2d 226, quoting State v. Gibson (1980), 69 Ohio App.2d 91, 95, 430 N.E.2d 954.
 {¶ 47} With regard to the failure to file a motion to suppress, generally, trial counsel's failure to file a motion to suppress does not per se constitute ineffective assistance of counsel. Kimmelman v.Morrison (1986), 477 U.S. 365, 384, 91 L.Ed.2d 305, 106 S. Ct. 2574; Statev. Nields, 93 Ohio St.3d 6, 34, 2001-Ohio-1291, 752 N.E.2d 859. A criminal defendant asserting a claim of ineffective assistance on this basis must show that the failure to file the motion to suppress caused him prejudice. State v. Robinson (1996), 108 Ohio App.3d 428, 433,670 N.E.2d 1077.
 {¶ 48} In order for defendant to have prevailed with a motion to suppress identification evidence, defendant would have been required to show that the procedure used by the police to gather evidence in this case, namely the use of the single photograph at the scene of the crime, was "unnecessarily suggestive and conducive to irreparable mistaken identification." Stovall v. Denno (1967), 388 U.S. 293, 302, 87 S. Ct. 1967,18 L. Ed.2d 1199. When determining "whether under the `totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive * * * the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Neil v. Biggers (1972), 409 U.S. 188, 199,93 S. Ct. 375, 34 L. Ed.2d 401.
 {¶ 49} The United States Supreme Court has acknowledged that the danger of an incorrect identification is increased where only one photograph is displayed to a witness. Simmons v. United States (1968),390 U.S. 377, 383, 19 L. Ed.2d 1247, 88 S. Ct. 967. However, even where a photographic identification procedure is found to have been impermissibly suggestive, the question becomes whether under the totality of the circumstances the identification was reliable even though the identification procedure was suggestive. Biggers, supra at 199. See Statev. Padgett (June 30, 2000), Greene App. No. 99 CA 87.
 {¶ 50} In this matter, Thorp testified that she watched defendant in the lobby over the course of approximately twenty minutes because he was behaving suspiciously, that she almost left the hotel because she felt uneasy about his conduct, that he stood close to her, that she saw his face and that she chased him until he went into a van. She provided police with a thorough description of him, including his clothing identified defendant from a photograph the next morning. At trial, she repeatedly stated that defendant was the assailant, but noted that he now had a beard. From this record we satisfied that Thorp's identification of defendant was reliable.
 {¶ 51} Moreover, we note that Roop also identified defendant as the man she had seen earlier near her vehicle and, as the man who left the hotel ahead of Thorp, as Thorp complained about the theft of her purse. Most significantly, Dawn Makuhan testified that defendant was with the group of people helping a neighbor move belongings into the hotel, that she knew his name, and that defendant stood behind Thorp as she checked in, then grabbed her purse and left the hotel. With this additional evidence, we are convinced that any failure to challenge Thorp's identification, did not change the outcome of this trial. Since no prejudice can be shown, we reject this claim of ineffective assistance of counsel.
 {¶ 52} The third assignment of error is without merit. Affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, Jr., J., and Kilbane, J., concur.